IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | No. 05-216 |
| JELANI LEE | : | |
| and | : | |
| TOMMY SPURILL | : | |
| and | : | |
| JAMES KOLLORE | : | |

**Stengel, J.**                                          **February 28, 2006**

### Memorandum Regarding Jelani Lee's Pretrial Motions

In this drug trafficking case, Jelani Lee is charged with possession with intent to distribute more than 50 grams of crack cocaine, possession with intent to distribute more than 5 grams of crack cocaine, and possession with intent to distribute more than 5 grams of crack cocaine in a school zone.  He is charged along with Tommy Spurill and James Kollore.  The defendants were arrested by Lancaster City Police on January 7, 2005, after a traffic stop.  An indictment was returned on April 14, 2005, and a superseding indictment was filed on August 4, 2005.

The defendants together filed twenty-three (23) pretrial motions and the government has filed its response to those motions.  A hearing was held on January 12, 2006 on the motions to suppress certain physical evidence, identification evidence, and certain statements.  The remainder of the motions are capable of resolution based upon

the legal arguments raised in the memos filed by the parties.  This memorandum addresses seven (7) of the motions filed by Jelani Lee.

I.    **Factual Background**

On January 7, 2005, Officer Marguerita Wagner was interviewing a complainant on the first block of South Mary Street in the City of Lancaster at approximately 7:42 p.m.  As she was discussing a parking issue with this complainant, Officer Wagner heard a vehicle come from Manor Street onto Mary Street and noticed that the vehicle was traveling at a high rate of speed for the neighborhood and the conditions, that is, approximately 40 to 45 miles per hour.  She noted that the car came within three feet of her, that the driver side window started to go up as it passed her, and that the windows of the car were dark tinted.  Officer Wagner described the car as a silver or gray Dodge Magnum; she could not see inside the car, nor could she get a registration from the vehicle.  She recalls that the vehicle was very dirty, but that the back window was partially cleaned.  Officer Wagner further saw the Dodge Magnum go north on South Mary Street and perform a "rolling stop" at the intersection of South Mary and West King Streets.  Officer Wagner got in her patrol car and tried to catch up with the Dodge Magnum.  She was unsuccessful with this.  She then called Sgt. Gary McCrady, her patrol supervisor, and told him to watch for the Dodge Magnum which she described as "driving recklessly through the city."

After receiving the initial call from Officer Wagner, Sgt. McCrady met briefly with Officer Wagner in the Water Street Rescue Mission parking lot near Prince and Conestoga Streets in Lancaster.  She described the silver/gray Dodge Magnum going through the stop sign.  Sgt. McCrady recalled an incident at the Manor Tavern, an establishment in the vicinity of South Mary and Manor Streets, involving a shooting and suspected drug dealers from New York.  Officer McCrady recalled that there was a Dodge Magnum involved, and he recalled that the car was of a "lighter color."  The Lancaster City Police produced a line-up memorandum regarding the car which had been provided to Sgt. McCrady and other officers at a roll call in October, 2004.

After meeting with Officer Wagner, Sgt. McCrady proceeded north on Queen Street and observed the Dodge Magnum.  At that point, he pulled the car over on the 600 block of North Queen street.  The vehicle had a New York registration plate.  At the time Sgt. McCrady stopped the Dodge Magnum, he also recalled information about a Taquan Isaac, who had been arrested by Lancaster City Police and who had threatened the police.  Isaac was known to Sgt. McCrady as a suspect in at least one shooting in New York City, and was suspected of involvement with drug dealing in Lancaster.  Isaac had been using a like colored Dodge Magnum, and it was Isaac's Dodge Magnum that was described in the line-up memorandum.  At the time of Isaac's arrest at the Manor Tavern, the Dodge Magnum went missing.

3

Sgt. McCrady testified that he spotted the Dodge Magnum approximately ten minutes after meeting with Officer Wagner, that it was proceeding north on Queen Street, and that it was going well over 35 miles per hour in an area with a posted speed limit of 25 miles per hour.  He recalls the windows as being dark tinted and felt that this might be the car Officer Wagner saw on South Mary Street.  Officer McCrady stopped the vehicle at approximately 7:57 p.m.  He approached the vehicle from the passenger side and noted the vehicle was occupied by an African-American male driver, with an African-American male in the front passenger seat, an African-American male in the right rear passenger seat, and a white female in the left rear passenger seat.  Sgt. McCrady noticed a lot of movement among the occupants of the vehicle while he was approaching.  With knowledge of the contents of the "line-up memorandum" and upon viewing these movements in the vehicle, Sgt. McCrady radioed for back-up assistance from other officers.  Sgt. McCrady then went to the passenger side of the car and spoke with the front passenger and the driver through the open passenger window.  The driver provided him with a New York driver's license identifying him as Jelani Lee.  Lee also produced a registration card showing that the vehicle was leased from Enterprise Rentals in New York.  The front seat passenger identified himself as "John Terry" and Sgt. McCrady noted that the rental agreement was in John Terry's name and was dated November 26, 2004.  McCrady further noted that the vehicle should have been returned to Enterprise

Rentals before November 29, 2004.  Officer McCrady ran Jelani Lee's driver's license and found that it was suspended in both Pennsylvania and New York.

Officer McCrady testified at the hearing he had some experience with rental vehicles with expired rental agreements.  He testified that he had encountered a number of these expired rental agreements in the recent past.  He recalled that the rental companies generally preferred the police contact them so that they could take custody of the vehicle.

After being radioed by Sgt. McCrady, Officer Wagner drove to the 600 block of North Queen Street in the City of Lancaster and identified the stopped vehicle as the same vehicle she had seen on South Mary Street.  At the hearing she testified that she was "immediately sure it was the same car."

Sgt. McCrady decided to have the occupants step out of the Dodge Magnum.  The police removed each occupant from the vehicle, one at a time, and performed a pat-down search on each of them.  Officer Wagner conducted the pat-down of the female passenger, identified as Lindsay Boyer.  During the pat-down, Officer Wagner felt hard objects, that she testified felt like rocks, inside both cups of Lindsay Boyer's bra, and asked her what they were.  Boyer whispered to Officer Wagner "its crack, but it's not mine, and don't tell them I told you."  Officer Wagner informed Boyer that she was under arrest.  Boyer noted that the drugs were not her's and stated that she was not going to take the fall for something that wasn't her's.  Boyer further told Officer Wagner that Jelani

5

Lee had given her the first bag, and that the rear passenger (James Kollore) had given her the smaller bag.  Boyer told Officer Wagner that the men had picked her up earlier in the evening, and had told her to hide the drugs when Sgt. McCrady activated his lights and pulled the Dodge Magnum over on North Queen Street.  A subsequent field test on the substance of each bag was performed for cocaine.

All four occupants of the car were placed under arrest.  The police searched Jelani Lee and recovered $977.00 in cash, as well as a motel room key.  The police found $562.00 on the person of James Kollore.  This cash was wrapped in one hundred dollar increments.  All four were then taken to the Lancaster City Police Department.

## II.       Jelani Lee's Motion to Suppress Physical Evidence

Jelani Lee seeks to suppress physical evidence found on his person and at the Red Carpet Inn.  He alleges that the traffic stop on North Queen Street was invalid, that there was no reasonable suspicion to detain him, and that there was no probable cause for his arrest.

Sgt. McCrady was justified in stopping Jelani Lee's car on North Queen Street.  Sgt. McCrady had observed the car moving from lane to lane in traffic at a speed in excess of the posted limit of 25 miles per hour.  In addition, Sgt. McCrady had information that the car was speeding on South Mary Street and that the car failed to stop at a stop sign at South Mary and West King Streets.  Failing to stop at a stop sign is a violation of the Motor Vehicle Code.  75 Pa CSA §3323(b).  Changing lanes without the

proper signal is a traffic violation.  75 Pa CSA §3309; 3334.  Careless driving, 75 Pa CSA

§3714, and reckless driving, 75 Pa CSA §3736, are both traffic violations.  A police

officer is justified in stopping a car where that officer observes a violation of a state

traffic regulation.  U.S. v. Moorefield, 111 F.3d 10, 12 (3d Cir. 1997) (citing

Pennsylvania v. Mimms, 434 US 106 (1977).

 Sgt. McCrady and the other officers acted in a reasonable way during the traffic

stop.  They took reasonable steps for their own safety when they encountered the Dodge

Magnum.  See Ohio v. Robinette, 519 U.S. 33, 39 (1996) (court found the touchstone of

the 4th Amendment is reasonableness which in turn is measured in objective terms by

examining the totality of the circumstances).  Our courts have recognized that traffic stops

are dangerous encounters and investigative detentions are fraught with danger to police

officers.  Moorefield, 111 F.3d at 13; Mimms, 434 US at 110.  The actions of Sgt.

McCrady and the other Lancaster City police officers meet the test of objective

reasonableness.  Lee ran a stop sign, he was speeding and  he was driving recklessly.

Upon approaching the vehicle, Sgt. McCrady learned that Lee had a suspended driver's

license and that there was no current, valid registration for the vehicle.  Finally, Sgt.

McCrady was aware of the possible involvement of this vehicle (i.e., a light colored

Dodge Magnum) in a shooting at the Manor Tavern involving drug dealers from New

York.

Based upon all the circumstances, I find Sgt. McCrady had a reasonable suspicion to justify the continued detention of Lee and to pat Lee down. Terry v. Ohio, 392 U.S. 1, 27 (1968); Moorefield, 111 F.3d at 13-14.

There was certainly probable cause to arrest Lee. He was driving under suspension in a car without a valid registration. An occupant of the vehicle he was driving was in possession of crack cocaine which she informed the police was given to her by the male occupants of the car. See Maryland v. Pringle, 540 U.S. 366, 371-72 (2003) (police had probable cause to arrest defendant based on drugs found in the vehicle in which defendant was a passenger).

Finally, Jelani Lee has no expectation of privacy in the crack cocaine in question. According to the statement Lindsey Boyer made to Officer Wagner, the men in the car gave her the cocaine to hide. She specifically identified the drivers, Jelani Lee, as one of the men who gave her the cocaine. By turning the crack cocaine over to Lindsey Boyer, Jelani Lee gave up any expectation of privacy he had with respect to the cocaine. To the extent Jelani Lee objects to the pat down of Lindsey Boyer, he has no standing. See Rawlings v. Kentucky, 448 U.S. 98, 105-06 (1980); United States v. Salvucci, 448 U.S. 83, 85 (1980).

## III.   Motion to Suppress Evidence Attained at the Red Carpet Inn

Jelani Lee contends that the search warrant issued for Room 42 of the Red Carpet Inn was improper and that the evidence obtained therein should be suppressed.

Specifically, Lee seeks to suppress the illegal drugs, $2,000 in cash, a digital scale, and two boxes of sandwich bags inside Room 42 of the Red Carpet Inn, all of which the police found in the room.

The affidavit supporting the search warrant establishes probable cause to search Room 42 at the Red Carpet Inn for drugs and related items. A careful examination of the affidavit itself shows that it contains specific information regarding the motor vehicle stop on North Queen Street earlier in the evening, and the subsequent recovery of crack cocaine from Lindsey Boyer, one of the passengers in the car driven by Jelani Lee. The affidavit further relates that Jelani Lee was interviewed at the police station, and that he told police he was staying at the home of Betty Morales at 402 South Queen Street in Lancaster. Two motel room keys had been recovered from Jelani Lee's person and this important fact is in the affidavit. Kalpana Patel, a clerk at the Red Carpet Inn, confirmed to the police that one of the room keys in Lee's possession was for Room 42 at the motel, and also that a man fitting Lee's description had been the person who rented the room under the name "Omar Martin." The affidavit relates information provided to the police by Lindsey Boyer which directly links Lee and his two co-defendants to the crack cocaine. The police also checked Lee's criminal record which showed that he had prior drug felony convictions from New York. The investigation conducted by the police established that Lee was involved in drug trafficking and that he had taken steps to conceal his name when renting Room 42 of the Red Carpet Inn.

9

Certainly the police had probable cause to believe that Jelani Lee was using the motel room to store drugs or other items associated with his drug trade.  Drug dealers are likely to secrete drugs and other tools of their trade where they live.  U.S. v. Whitner, 219 F.3d 289 (3d Cir. 2000).  The magistrate judge examined the affidavit of probable cause and was more than justified in issuing the warrant.  A district court should give deference to the magistrate judge's probable cause determination.  U.S. v. Loy, 191 F.3d 360 (3d Cir. 1999); U.S. v. Conley, 4 F.3d 1200 (3d Cir. 1993).  We need not determine whether probable cause actually existed, but only whether there was a substantial basis for finding probable cause.  U.S. v. Jones, 994 F.2d 1051 (3d Cir. 1993).  There is no question that the affidavit of probable cause set forth a substantial basis for finding probable cause to search the motel room.

Even if I were to find that the affidavit did not establish probable cause, the warrant was facially valid and the police relied on the warrant in good faith.  This, alone, would be sufficient to justify the search of Room 42 at the Red Carpet Inn and the seizure of the evidence in the room.  See U.S. v. Leon, 468 U.S. 897 (1984).

IV.  **Jelani Lee's Motion to Preclude Introduction of Evidence of Prior Convictions in the Event Lee Testifies at Trial**

Jelani Lee has three drug convictions in his life.  On March 17, 1995, he was convicted for a felony drug offense in the Court of Albany County, New York and was sentenced to 20 months to 5 years imprisonment.  On February 22, 1995, he was convicted of a misdemeanor drug offense and sentenced to 60 days imprisonment in the

Court of Albany County, New York.  On January 25, 2001, he was convicted of a felony

drug offense in a school zone and was sentenced by the Court of Queens County, New

York to 18 months to 3 years imprisonment.  Jelani Lee seeks an order preventing the

government from using these convictions at trial.

This issue is governed by Fed. Rule of Evidence 404(b) which states:

> Evidence of other crimes, wrongs or acts is not admissible to
> prove the character of a person in order to show action in
> conformity therewith.  It may, however, be admissible for
> other purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity or absence of mistake
> or accident... .

Fed. R. Evid. 404(b).

The admission of 404(b) evidence is within the District Court's discretion limited

only in circumstances which are clearly contrary to reason and not justified by the

evidence.  U.S. v. Murray, 103 F.3d 310 (3d Cir. 1997).  See also Becker v. ARCO

Chemical Company, 207 F.3d 176 (3d Cir. 2000).  In the Third Circuit, the court is

required to place on the record a clear explanation of the basis for the admission of Rule

404(b) evidence.  Murray, supra.  The United States Supreme Court provides guidance for

evaluating and admitting 404(b) evidence: the evidence should be admitted (1) if it is

offered for a proper purpose, (2) if it is relevant, (3) if the evidence's probative value is

not substantially outweighed by its unfair prejudice, and (4) if the court properly instructs

the jury that it should consider the evidence only for the proper purpose for which it was

admitted.  See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  So long as the

11

District Court explains its reasons for admitting or excluding evidence pursuant to Rule 403, relevant evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice suggests a decision on an improper basis.

To begin with, Jelani Lee's drug convictions are relevant to the current charges. Lee was engaged in illegal drug distribution earlier in his life and this is clear from the three convictions from the State of New York. The government seeks to offer his prior convictions for a proper purpose, that is, to refute any defense of lack of knowledge or intent. We can expect Jelani Lee to claim lack of knowledge or intent at trial in that the drugs were found on the person of Lindsey Boyer. The evidence of Lee's prior convictions is probative on the issue of his state of mind or his intent in this case. He is charged with possession with <u>intent</u> to distribute crack cocaine. <u>U.S. v. Givan</u>, 320 F.3d 452 (3d Cir. 2003). (Admitting evidence of defendant's prior conviction for distribution of cocaine is relevant to issue of knowledge and intent.) <u>See also</u> <u>U.S. v. Wright-Barker</u>, 784 F.2d 161 (3d Cir. 1986).

This court will give the jury an appropriate limiting instruction at the time the evidence is admitted. Further, a limiting instruction will also be given during the court's final charge to the jury. The jury will be instructed that the evidence of prior convictions is to be considered only as it relates to the element of state of mind or intent and should not be used for any other purpose.

**V.**   **Jelani Lee's Motion to Suppress Identification Evidence**

After the Lancaster City Police recovered the motel key for Room 42 at the Red Carpet Inn from Jelani Lee, Detective Michael Neff of East Lampeter Township Police Department joined the Lancaster City Police in the investigation.  Neff assisted in the execution of the search warrant at the Red Carpet Inn on January 8, 2005, along with detectives from the Lancaster City Police, Lancaster County Drug Task Force and East Lampeter Township.   After the search warrant was executed, Detective Neff returned to the Red Carpet Inn and spoke with the proprietress, Kalpana Patel.  Detective Neff had prepared a photo array containing a photograph of Jelani Lee.  Detective Neff showed the photo array to Kalpana Patel without any comment or suggestion as to whether Jelani Lee was depicted on the array.  Kalpana Patel pointed to photograph number 7 on the array and identified him as the person who rented Room 42.  Photo number 7 was a photograph of Jelani Lee.  Ms. Patel told Neff she was "absolutely certain" Jelani Lee, i.e. the man depicted in Police photograph number 7, was the man to whom she rented Room 42.   She noted that he had come into the office and paid for the room and she made it clear that she recognized him.  Ms. Patel also recalled that the week before Christmas, 2004, Jelani Lee came to the Red Carpet Inn and rented Room 34.

An out-of-court identification, such as an identification performed by Kalpana Patel on the photo array, is admissible so long as it does not violate due process.  A denial of due process occurs if the identification procedure is unnecessarily suggestive.  If the

13

police take steps to "suggest" that the defendant may be depicted on the array, there is a substantial risk of misidentification.  U.S. v. Emanuele, 51 F.3d 1123 (3d Cir. 1995).

The key to out-of-court identification by photo array is whether the identification is reliable.  The courts look at the totality of the circumstances including (1) the witness' opportunity to observe the defendant at the time of the crime; (2) the witness' degree of attention at the time of the crime, (3) the accuracy of the witness' initial description, (4) the level of certainty demonstrated by the witness when viewing the defendant at the identification procedure, and (5) the length of time between the crime and the identification procedure.  Neil v. Biggers, 409 U.S. 188 (1972).

There is no evidence in this record that the photo array shown to Kalpana Patel on January 11, 2005 was in any way suggestive.  There is no evidence that the police took part in any activity which rendered the array suggestive.  Ms. Patel was instructed to look at the eight photographs to see whether she was able to identify anyone.  The police did not direct her to the photograph of the defendant Lee, nor did they do anything to highlight his photograph or cause her attention to be focused on his photograph.  Further, Ms. Patel's identification of Jelani Lee was reliable.  She was able to provide detail as to when he came to the motel, which room he rented, and her familiarity with him from an earlier occasion when he rented Room 34.  She had every opportunity to observe him at close range.  She made an initial description of the man who rented Room 42, and this description was accurate with respect to the physical characteristics of Jelani Lee.  Ms.

14

Patel expressed certainty when she viewed the photo array and identified photograph number 7 as that of Jelani Lee.  She identified Lee's photograph three days after he had rented the motel room and her memory was fresh at that time.

VI.   **Jelani Lee's Motion for a Line-Up**

Jelani Lee is requesting a court order to have the government's witnesses identify him in a line-up.  The government argues that no useful purpose would be served by ordering its witnesses to view Mr. Lee in a line-up.  At issue here is the identification of Jelani Lee by Ms. Patel, the motel employee.  The request to have Ms. Patel identify Jelani Lee in a line-up is made some seven months after the incident in this case.  The Court presumes that Ms. Patel has not seen Mr. Lee in seven months.  Were Ms. Patel to have some difficulty picking Lee out of a line-up, that fact would do little to cast doubt on her identification of Lee at the time of the incident.  She identified Jelani Lee within three days of renting him a motel room.  The identification procedures used by the police; i.e. the photo array, were in no way unduly suggestive.  There was uncontroverted and credible testimony at the suppression hearing as to the steps taken by the police to present the photo array to Ms. Patel.  The photo array was proper and the identification by Ms. Patel of Jelani Lee was clear and definite.  There is nothing about her initial identification of Jelani Lee, some seven months ago, that should give cause for this Court to order that a line-up take place to "test" Ms. Patel's ability to identify Lee.  That line-up would test her

ability to identify Lee today, not at the time of the identification that took place nearly

contemporaneous with his arrest. [1]

## VII.   Motion to Sever Trials of the Three Defendants

Jelani Lee has been charged along with Tommy Spurill and James Kollore with

drug trafficking offenses.  The United States has indicated its intention to try all three

defendants together.  Jelani Lee has filed a motion to sever his trial.  Fed. R. Crim. P. 14

permits severance of an otherwise properly joined defendant "if it appears that the

defendant... is prejudiced by a joinder of offenses or of defendants."  The law favors joint

trials of defendants indicted together.  Zafiro v. United States, 506 U.S. 534 (1993).

Zafiro instructs that in certain circumstances defenses which are mutually antagonistic or

irreconcilable may be so prejudicial that severance is mandated.  The Supreme Court has

recognized that Rule 14 does not require severance when the defendants present mutually

antagonistic defenses.  The Supreme Court has ruled that even if a defendant shows

prejudice as a result of mutually antagonistic defenses, severance is not required  and "the

tailoring of the relief to be granted, if any, is left to the district court's sound discretion."

Zafiro at 539.  A district court should grant a severance motion under Rule 14 only if

there is a serious risk that a joint trial would compromise a specific trial right of one of

the defendants or prevent the jury from making a reliable judgment about guilt or

---

[1] At trial, counsel for the defendant will have a chance to cross examine Ms. Patel and the police officers as to the circumstances of the identification of Jelani Lee from the photo array.  Whether Ms. Patel's identification of Jelani Lee three days after renting a motel room to him is credible and entitled to weight, will be a determination for the jury.

innocence.  <u>Zafiro</u>; <u>United States v. Palma-Ruedas</u>, 121 F.3d 841 (3d Cir. 1997); <u>United States v. Balter</u>, 91 F.3d 427 (3d Cir. 1996).

This case is not a complex case where the defendants have "markedly different degrees of culpability."  <u>See</u> <u>Zafiro</u>, 506 U.S. at 539.  Nor have the defendants established that there is a "<u>Bruton</u> problem"[2]; i.e., where the admission of a statement against one defendant necessarily inculpates another.  As to levels of culpability, the indictment contains more charges against Jelani Lee because he was charged exclusively with possession with intent to distribute crack cocaine from the motel room.  All three defendants are charged with possession of the crack cocaine in the car.  This crack cocaine, which was recovered by the police from the person of Lindsey Boyer, exposes each of the three defendants equally to culpability.  From the arguments of counsel and from the evidence presented at the suppression hearing, it appears that the majority of the evidence in this case will be admitted against all three defendants.

This does not appear to be a case where the acquittal of one defendant necessarily would require the conviction of another.  This is the problem described by the Third Circuit in <u>United States v. Voight</u>, 89 F.3d 1050 (3d Cir. 1996).  The questions for the jury will be who possessed the crack cocaine, and who had the intent to distribute the crack cocaine.  The jury will be capable of making separate decisions on these issues as to each of the three defendants.  The motion to sever will, for this reason then, be denied.

---

[2]<u>Bruton v. United States</u>, 391 U.S. 123  (1968).

17

**VIII.   Jelani Lee's Motion to Dismiss the Indictment Based on Speedy Trial Act Violations**

Jelani Lee requests this Court to dismiss the indictment on speedy trial grounds.

He contends that the indictment was not filed within thirty days of his arrest.

On March 29, 2005, Jelani Lee was charged by complaint and warrant approved by

the Honorable Jacob P. Hart, United States Magistrate Judge.  On April 14, 2005, a two

count indictment was returned against Lee, well within the thirty-day limit.

Title 18 of the United States Code, §3161(b) (Speedy Trial Act) provides:

> Any information or indictment charging an individual with
> the commission of an offense shall be filed within thirty days
> from the date on which such individual was arrested. . . in
> connection with such charges.

18 U.S.C. § 3161(b) (2005).

Title 18 U.S. Code 3161(c)(1) provides:

> The trial of a defendant charged in an indictment with the
> commission of an offense shall commence within seventy
> days from the filing of the indictment, or from the date the
> defendant has appeared before a judicial officer of the court in
> which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (2005).

A review of the docket entries establishes that Lee was charged within thirty days

of his arrest.  There does not seem to be any real dispute about that.

There is no basis to dismiss this case for the failure to begin trial within seventy

days of the filing of the indictment.  On June 6, 2005, co-defendant, James Kollore, filed

a motion for the continuance of the trial date, along with a motion for leave to extend the time to file further motions.

This was well within the seventy-day period from the indictment.  Defendants, Lee and Spurill, filed pretrial motions which effectively tolled the speedy trial time.  The indictment was timely filed and the speedy trial clock was tolled by the filing of a motion for a continuance by defendant Kollore.

Trial in this case was scheduled again for January 30, 2006.  Counsel for James Kollore filed another motion for a continuance, and this tolls the speedy trial clock as to Kollore and his co-defendants, Lee and Spurill.  There is no merit to the speedy trial motion and Jelani Lee's Motion to Dismiss on that basis will be denied.

An appropriate Order denying Lee's motions follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | No. 05-216 |
| JELANI LEE | : | |
| and | : | |
| TOMMY SPURILL | : | |
| and | : | |
| JAMES KOLLORE | : | |

## **ORDER**

_____**AND NOW**, this 28th day of February, 2006, upon careful consideration of the
defendant Lee's motions, the government's response, and oral argument held with the
parties, it is hereby **ORDERED**:

1)      Defendant Lee's Motion to Suppress Physical Evidence Found on the
Defendant (Docket # 58) is **DENIED**.

2)      Defendant Lee's Motion to Suppress Evidence Attained at the Red Carpet
Inn (Docket # 58) is **DENIED**.

3)      Defendant Lee's Motion to Preclude Introduction of Evidence of Prior
Convictions in the Event Lee Testifies at Trial (Docket # 58) is **DENIED**.

4)      Defendant Lee's Motion to Suppress Identification Evidence (Docket # 58)
is **DENIED**.

5)      Defendant Lee's Motion for a Line-Up (Docket # 58) is **DENIED**.

6)      Defendant Lee's Motion to Sever Trials of the Three Defendants (Docket # 58) is **DENIED**.

7)      Defendant Lee's Motion to Dismiss the Indictment Based on Speedy Trial Act Violations (Docket # 58) is **DENIED**.

BY THE COURT:


 /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.