

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL ACTION |
| v. | : NO. 05-216-01 |
| JELANI LEE, a/k/a "C-Lo," a/k/a "Omar Martin" | : |

*FILED DEC 10 2007 MICHAEL E. KUNZ, Clerk By ___ Dep. Clerk*

## MEMORANDUM

**STENGEL, J.**                                                              December 6, 2007

On June 14, 2006, a jury convicted Jelani Lee of two counts of possession with intent to distribute cocaine base. The jury found him not-guilty of possession with intent to distribute cocaine base within 1000 feet of a school. Prior to trial, the government filed an information charging three prior "controlled substance offenses," pursuant to 21 U.S.C. § 851, thereby making Lee eligible for enhanced penalties. On January 29, 2007, Lee was sentenced to a mandatory term of life imprisonment.[1] Lee filed a timely appeal with the Third Circuit Court of Appeals.[2]

---

[1] On Count I, Lee was sentenced to life imprisonment followed by ten years of supervised release pursuant to 21 U.S.C. § 841(b)(1)(A)(iii), which provides: "if any person commits a violation of 21 U.S.C. § 841 . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a *mandatory* term of life imprisonment without release."

On Count II, Lee was sentenced to 360 months' imprisonment to run concurrently, and followed by eight years of supervised release.

[2] On May 24, 2007, the Third Circuit Court of Appeals stayed its briefing schedule pending the outcome of Lee's motion for new trial, and remanded the case. See Rule 33(b)(1) of the Federal Rules of Criminal Procedure.

Lee now seeks a new trial on the basis of "newly-discovered evidence." He argues that the government did not turn over in discovery a nine-page report prepared by the City of Lancaster Police Department memorializing an August 12, 2005 interview with Brenda Mitchell. See Def's Mot., Ex. A. The report prepared by the police reveals that during that interview, Mitchell discussed what she knew about illegal drug sales and other related crimes in the Lancaster area. She made passing reference to being acquainted with Lee, and noted that the drugs recovered during the arrest of Lee were not Lee's, but belonged to Lindsey Boyer, the woman in the vehicle at the time of Lee's arrest. The police quoted Mitchell as saying, "Little bitch told the police it was C-Lo's [Lee's] stuff, but it was hers. . . she did the same thing to D-Mo [Dominick Stokes]." Id. at 3. This conflicted with Boyer's testimony at trial that the drugs found on her person at the time of arrest were given to her by the other three occupants of the vehicle, one of whom was Lee. The report also showed that Mitchell said that Boyer was a crack-addicted prostitute, and that they had a "hit on her ass." Id.

I.   **DISCUSSION**

Rule 33 of the Federal Rules of Criminal Procedure provides that upon a defendant's motion, the court may vacate any judgment and grant a new trial if the interests of justice so requires. A district court can order a new trial only if the court believes that "there is a serious danger that a miscarriage of justice has occurred – that is, an innocent person has been convicted." United States v. Johnson, 302 F.3d 139, 150-51

(3d Cir. 2002). Rule 33 motions "are not favored and should be granted only with great caution 'in the most extraordinary circumstances.'" United States v. Rhines, 143 Fed. Appx. 478, 484 (3d Cir. 2005) (quoting United States v. Barroso, 108 F. Supp. 2d 338, 341 (S.D.N.Y. 2000)).

As the sole basis for his request for a new trial, Lee argues that his rights under Brady v. Maryland, 373 U.S. 83 (1963), have been violated. He insists that the government was aware of the exculpatory evidence of Mitchell's interview but did not produce it during discovery as required. Lee characterizes this evidence as having impeachment value regarding the testimony of Boyer, material to Lee's defense and supportive of a reasonable probability that the result of the trial would have been different if the evidence had been provided to his attorney. I do not agree.

A criminal defendant's due process rights are violated when the prosecution suppresses favorable evidence that is material to the guilt of the accused, regardless of whether the defendant requests the material. Strickler v. Greene, 527 U.S. 263, 280 (1999); United States v. Bagley, 473 U.S. 667, 682 (1985); see also Banks v. Dretke, 540 U.S. 668 (2004) (quoting Brady, 373 U.S. at 87) (the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution).

In order to demonstrate a violation under Brady, the defendant must show that (1)

3

the prosecution suppressed evidence; (2) the evidence is favorable to the accused because of its impeachment or exculpatory value; and (3) the non-disclosure prejudiced the defendant. Strickler, 527 U.S. at 281-82. Pursuant to the rule enunciated in Brady, "exculpatory evidence" includes material that goes to the heart of the defendant's guilt or innocence as well as that which might alter the jury's judgment of the credibility of a crucial prosecution witness. United States v. Starusko, 729 F.2d 256 (3d Cir. 1984).

Whether the government actually suppressed this evidence is not dispositive here. The government concedes that the report of Mitchell's interview was "inadvertently" omitted from the discovery provided to the defense prior to trial. The information obtained from Mitchell during that interview was provided to Lancaster Police Detectives who were conducting an investigation of Prince Isaac and other individuals for alleged drug and firearms trafficking in and around Lancaster County. Although the primary focus of the interview was on Prince Isaac and his gang, the detectives questioned Mitchell about Lee because she stated she knew him.

On July 19, 2007, I held a hearing on Lee's motion for a new trial. Brenda Mitchell testified at the hearing.[3] The discussion about Lee, according to Mitchell's testimony, was brief and in the context of a lengthy interview about the Prince Isaac case. Due to the number of interviews conducted by the police in the Prince Isaac investigation, the Lancaster detectives developed a backlog of reports that often were not prepared until

---

[3] The government assured me that it was unaware of any investigation of Mitchell. Out of caution, I appointed an attorney to represent Mitchell at this hearing.

4

months after the actual interviews were completed. Thus, the report of interview for Mitchell's interview was not prepared until long after the interview was completed. When the Lancaster Police gave the report to the United States Attorney on February 21, 2006, it was filed in the Prince Isaac[4] file, because the Assistant United States Attorney was unaware of the relevant portion of the interview which dealt with Lee. I find that this report was not disclosed to the defense in this case before trial. I further find that this failure to disclose was not intentional and that the government had no purpose to conceal exculpatory information from the defense.

Nevertheless, it is at the two final prongs of this test where the lack of a Brady violation is evident. Initially, I note that the report of interview of Mitchell does not explain where Mitchell secured the information that she provided to the Lancaster Police regarding Lee. At the hearing, however, Mitchell testified that the information was provided to her solely by Lee during a telephone conversation with him from prison. He told her that the drugs belonged to Boyer, and not to him. Assuming that this information was admissible, it was not material to Lee's defense. Evidence is material "if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different." United States v. Perez, 280 F.3d 318, 348 (3d Cir. 2002). The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial

---

[4] The Lancaster Police were conducting an investigation of Prince Isaac in conjunction with the United States Attorney's Office.

resulting in a verdict worthy of confidence. Strickler, 527 U.S. at 289-90. The materiality standard for Brady claims is met when the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Kyles v. Whitley, 514 U.S. 419, 435 (1995)). The evidence in question here, however, is far from favorable to Lee.

Mitchell testified at the hearing that "Butch," her boyfriend, met Lee while the two were in prison. Butch asked her to help Lee by making third-party telephone calls for Lee while he was in prison. These calls included calls to his wife, his mother, his baby's mother, and his father who lived in Jamaica. In return, Lee paid Mitchell's rent from prison, and sent money and powder cocaine to her on at least three occasions. This was accomplished by order of Lee to Faith Wolf, his partner in the drug sales business. According to Mitchell, Lee directed Wolf "to go and bless" Mitchell, i.e., give her some cocaine and money.

Mitchell also testified that, on occasion, she would eavesdrop on the third-party telephone calls she placed for Lee. Once, she heard Lee tell his wife that there was $10,000 cash in a brown paper bag in their house in New York. Other times, she heard Lee tell his wife to collect money from various sources who owed him money from drug sales.

The police report of the interview with Mitchell also indicates that Mitchell said that Boyer "did the same thing to D-Mo." The detective added, "I asked her if she meant

6

setting someone up, and she said yeah." Lee characterizes this latter statement as exculpatory, and insists that it supports his allegation of a Brady violation. At the hearing, however, Mitchell clarified that the detective's rendition of the meaning of her statement was inaccurate in that what she meant was that Boyer had gotten drugs from D-Mo and did not pay for them just as Boyer had gotten drugs from Lee and did not pay for them. The use of the term "setting someone up" was the detective's choice of words, not hers. Thus, this statement has no exculpatory value.

At the hearing on Lee's motion, the government called Lancaster Detective Michael Winters, the lead detective in the Prince Isaac case, who interviewed Mitchell with his partner Detective Kent Switzer, and prepared the report of the interview with Mitchell months later. Detective Winters testified that there were well over one hundred reports of interviews prepared in connection with that complex case. He confirmed that Faith Wolf was involved in the drug sales business with Lee, and headed the business while Lee was in prison. Detective Winters also testified that he and Detective Switzer became skeptical about all of the information Mitchell gave to them when they determined that Mitchell was lying during the interview. For example, Mitchell provided false information concerning shootings in Lancaster and Coatesville. The detectives knew that the information was contrary to what they knew to be true and what they had learned from interviewing other witnesses. When confronted with the truth, Mitchell confessed that she lied about who committed one of the murders to get back at someone

7

who had raped one of her friends. Mitchell insisted at the hearing that although she had lied several times during the interview, the lies concerned the Prince Isaac investigation only. The detectives subsequently decided not to present Mitchell as a witness to the grand jury due to her lack of credibility.[5]

After consideration of the testimony at this hearing, it has become clear that the evidence of the report of interview with Mitchell was not favorable to Lee, and that Mitchell would have been a more favorable witness to the government than to Lee. Mitchell had direct knowledge of Lee's status as a significant drug trafficker and as her personal supplier of cocaine, and of his involvement in a conspiracy to have Boyer killed. Thus, I find that the interview of Mitchell has no exculpatory value to Lee.

Lee also argues that the report of interview of Mitchell would have had impeachment value. Mitchell told the detectives during the interview that Boyer "was turning tricks and was smoking it," i.e., crack. At the hearing, Mitchell testified that Boyer would do whatever it would take to get high, including "turning tricks" and selling drugs. Lee insists that this evidence would have put Boyer, a chief government witness, in a negative light, and would have supported the defense contentions about Boyer. However, Mitchell's statements about Boyer constitute inadmissible hearsay. Mitchell testified at the hearing that she had never met Boyer, had no contact with her, had never

---

[5] In fact, the detectives arrested Mitchell after the interview because they had warned her that if she lied, they would arrest her on an open warrant.

seen her using or selling drugs, or had never spoken with her. Her characterization of Boyer as a crack-addicted prostitute came solely from "the streets." She had no personal knowledge of this information. Moreover, Mitchell's statements about Boyer would have been cumulative. Defense counsel at trial pursued the allegations that Boyer was a crack-addicted prostitute, and tried to discredit her testimony using those allegations. In fact, one defense attorney repeatedly called Boyer "a prostitute" during his closing argument. Mitchell's statements could not have been used as impeachment of the testimony of Boyer.

It is also important to note that Lee was not convicted based solely on the testimony of Boyer. At trial, Kalpana Patel, a motel employee, directly linked Lee to the motel room in which large amounts of crack cocaine and cash were recovered. Mitchell's interview would not have affected that testimony.

Lee has not demonstrated a <u>Brady</u> violation. The information contained in the interview report was immaterial to Lee's defense, and would not have altered the verdict in Lee's trial or otherwise undermined confidence in the jury's verdict. The evidence inadvertently omitted by the government during discovery had no impeachment or exculpatory value, and thus was not favorable to Lee. Further, its non-disclosure did not prejudice Lee at trial. No miscarriage of justice has occurred and no innocent person has been convicted. Jelani Lee was convicted by overwhelming evidence and the report of Mitchell's interview or Mitchell testifying in Lee's defense would not have changed that

9

at all. Accordingly, I will deny Lee's motion for a new trial.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL ACTION |
| v. | : NO. 05-216-01 |
| JELANI LEE,<br>a/k/a "C-Lo,"<br>a/k/a "Omar Martin" | : |

**ORDER**

FILED
DEC 10 2007
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**AND NOW**, this 6th day of December, 2007, upon consideration of the defendant's motion for a new trial (Document #156), the government's response thereto (Document #158), and after a hearing on the motion with all parties present, it is hereby ORDERED that the motion is DENIED.

BY THE COURT:

_____
LAWRENCE F. STENGEL, J.

fax: 12/10/07
Miller, Huff